The opinion of the court was delivered by
Tilghman, C. J.
James Duffy, to whom the defendants appear to be/ indebted in' the sum of $4,.000, obtained a rule on them, tq show.cause,■ why a mandamus should not issue, commanding them to draw their certificate in his favour for that sum, directed tq the treasurer of the commonwealth.
The case depends on the 57th and 77th sections of the {£ act for the. improvement of the state,” passed the 26tli of March, 1821. By the 57th section, “ the governor is authorised and required to subscribe on behalf of the commonwealth, to the stock of the Hanover and Carlisle turnpike road company, one hundred shares-, to be expended, in completing that part of the road, from the 15th milestone, across the South mountain, and as soon as the first 5 miles shall have been completed, the governor shall draw his warrant on the state treasury, in favour of the president and managers of the said company, for #5,000, and oh the completion of the second 5 miles, for the further sum of @5,000.” It is admitted, that the road has been completed for the distance of lb miles, from the 15th mile stone, and the governor has drawn two warrants in favour of the company,, for @5,000 each, of which @6,000 have been paid to the order of the company, and @4,000 still remain in the treasury. By the 77th section of the act, it is enacted, “ that it shall be the duty of the president and managers of the' several turnpike road and bridge companies, to which the governor is au-thorised, by this act, .to subscribe for stock, before they or any of them shall draw out of the state treasury, any part of the money subscribed, to settle the accounts of all such persons who may have *61 heretofore performed work, &e. and to whom they are indebted for work done, &c.. and who hold the accounts in their own right, without having heretofore made a transfer thereof to any other persons, and the amount due and payable to them respectively, shall be certified by the presidents and attested by the treasurers respectively, under the corporate seal, and a duplicate of each certificate shall be transmitted by the treasurer of each company to the state treasurer, and the certificate given to each creditor shall be received by the state treasurer, and paid by him to the holder thereof or his order, and the amount so paid, shall be deducted from the appropriations made to such company..”
This act contains 77 sections, making appropriations for. a great number of companies; and when it is considered that so many different interests were involved, each of which .had its particular friends and patrons, in the' legislature, it is no wonder, if there should appear some little incongruity in different parts of the act. But we must construe it, if possible, so as to avoid all inconsistency, and give operation to every part. It appears then, that there were two objects in view; one, to pay debts contracted by the companies, before the passage of the act, and another, to complete certain roads which were in an unfinished state. Where the roads were already finished, it would be proper to apply the whole appropriation -to the payment of debts. But where they were unfinished, it might be expedient to apply the appropriations in whole or in part, to future expenses, in order to accomplish the completion of the road. Accordingly, it will be found, that some of the appropriations are expressly applied to future expenditures, and in such cases, it would be defeating the intent of the act, to apply the money to the payment of old debts. The 77th section! then, though general in its expressions, must be restrained, so as to embrace those cases only, in-which there was .no special appropriation pf the money subscribed, to future expenditures, and can have no effect on the 57th section, by which it was directed, that the subscription to the Hanover and Carlisle turnpike road company, should be expended in completing a certain part of the road. Still the 77th section will not be nugatory, for it will apply to the greatest part of the money granted by the commonwealth for the improvement of the state. That this is the true construction of the law, is very clear, and therefore it is the opinion of the court, that James Duffy is not entitled to a certificate from the president of this company for the amount of his debt. While I am on the subject, Í will give the opinion of the court, on the rules obtained by the company, on the state treasurer, to show cause why a mandamus should notissue, commanding him to pay to the company the sum of $5000, which remains in the treasury, and is part of the money for which warrants were drawn on him by the governor. He has shown for cause, that James Duffy claims the said *62 sum of $4,000, to which he says he is entitled, by virtue of a contract with the company. It appears, from the return made by the president of the company, that they were indebted to Huffy and a certain John Pedan deceased, on a contract with them jointly, for work done on the road prior to the passage of the “ act for the improvement of the state,” in the sum of $3,000, and that the administrator of Pedan has given notice to the president and managers of the company not to pay the money to Duffy. And it also appears by the said return, that the company made another contract with Duffy, for work to be done towards the completion of the road, for the performance of which, Duffy gave security: But it is averred in the said l’eturn, that no .work was done by Duffy in pursuance of this contract, and that at the request oí' Matthew Irvine, the agent and security of Duffy, that contract was rescinded. If the return made by the president, on behalf of the company be false, Duffy may have his action againsthim; but, at present, this court must hold the return for truth. Taking it for true then, Duffy has no right to a certificate, and it would be a breach of duty in the officers of the company to grant him one. If the company should apply the money granted by- the legislature- towards the expenses of completing the road, to the payment of an old debt, they would violate the law. And for debts contracted in the completion of the road, no certificate is to be given, but the president and managers may, if they please, draw orders on the state treasurer. If, however, the officers of the company do not choose to draw orders, but demand the money from the treasurer, themselves, it is our opinion, that the treasurer ought to pay them. This is his duty, plainly pointed out by the act of assembly, and he is not to interfere in disputes between the company, and persons with whom they may have entered into contracts for work to be done towards the completion of the road.The governor-has drawn his warrant in favour of the president and managers of this company, and their receipt, will be the treasurer’s voucher, for payment, of the money. This is our opinion of the treasurer’s duty; but at the'same time, it is not thought proper to issue a mandamus, because we are now holding a court in the southern district, and the treasury of the commonwealth is kept in the Lancaster district. The practice has been, not to issue writs of mandamus, except from the court which sits in the district in which the persons reside, to whom the mandamus is to be directed.
It is 'the opinion of the court, therefore, that the rules, in both cases, should be discharged.
Rules discharged.